UNITED STATES DISTRICT COURT
~~MIDDLE~~ MIDDLE ~~EASTERN~~ DISTRICT OF TENNESSEE
AT _Nashville_

William L. Jenkins #432967            )

_____      )

_____      )

(Enter above the NAME of the         )
plaintiff in this action.)

RECEIVED
IN CLERK'S OFFICE

APR 16 2014

U. S. DISTRICT COURT
MID. DIST. TENN.

1:14-cv-53

Tenn. Department of Corrections; Correc-
tion Corporations of America; South Cen-
tral Correctional Facility; T.D.O.C. Com-
missioner Derrick Schofield; S.C.C.F Warden Arvil Chapman;
Gang Coordinator Gregory Keeton; Chief of Security
Christopher McClain; Captain Daniel Johnson;
Senior Officer Hank Lindman; Senior Officer Robin Todd;
Senior Officer Amber Bass; Correctional officer Tommy
Mize; Senior Officer Leigh Staggs; Correctional
Officer Richard Burke; Grievance Chairperson
Jessica McElroy; Medical Director Wendy Ashe;
Chief of Security Clarence Potts; S.C.C.F Med-
ical Depar-
tment (Enter above the NAME of each
defendant in this action.)                    )

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. Section 1983)

I.     PREVIOUS LAWSUITS

    A.     Have you begun other lawsuits in state or federal court dealing with the same facts
involved in this action or otherwise relating to your imprisonment? YES ( ) NO (✓)

    B.     If your answer to A is YES, describe the lawsuit in the space below. (If there is more
than one lawsuit, describe the additional lawsuits on another piece of paper, using the
same outline.)

        1.     Parties to the previous lawsuit:

        Plaintiffs: _____N/A_____

        _____

        Defendants: _____N/A_____

        _____

1

2. COURT: (If federal court, name the district; if state court, name the county):

_____N/A_____

3. DOCKET NUMBER: ___N/A_____

4. Name of Judge to whom case was assigned: ___N/A_____

5. Disposition: (For example: Was the case dismissed? Was it appealed? Is it still pending?) ___N/A_____

6. Approximate date of filing lawsuit: ___N/A_____

7. Approximate date of disposition: ___N/A_____

II. PLACE OF PRESENT CONFINEMENT: Morgan County Correctional Complex

A. Is there a prisoner grievance procedure in this institution? YES (✓) NO ( )

B. Did you present the facts relating to your complaint in the prisoner grievance procedure? YES (✓) NO ( )

C. If your answer is YES,

1. What steps did you take? I filed a total of 3 grievances concerning the deliberate indifference claims (Grievance # 266729-19908),(Grievance # 268790 - 20147) (Grievance # 268790 - 20147) and I filed I grievance concerning the corruptive retaliation claims (Grievance #269515-20283)

2. What was the result? All 3 of the deliberate indifference grievances were deemed inappropriate per policies 501-01, section VI,C-1 multiple issues; 501.01 section VI, H-1, disciplinary matters; 501.01 VI,I-1 similar or same issues. All 3 were appealed to the highest level, I was disqualified (explained in section 4 of complaints), the 2nd was concured by TDOC commissioner and the 3rd has yet to return. The corruptive retaliation grievance was also appealed to the highest level and was also concured by the TDOC commissioner Derrick Schofield, no rel-

D. If your answer to B is NO, explain why not. (it was granted.)

_____N/A_____

E. If there is no prison grievance procedure in the institution, did you complain to the prison authorities? YES ( ) NO ( ) N/A

F. If your answer is YES,

1. What steps did you take? ___N/A_____

_____

2

2. What was the result? ___N/A___

## III. PARTIES

(In item A below, please your name in the first blank and place your present address in the second blank. Do the same for any additional plaintiffs.)

A. Name of plaintiff: William L. Jenkins #432967

Present address: M.C.C.X, P.O. Box 2000, Wartburg, TN 37887

Permanent home address: ___N/A___

Address of nearest relative: 298 B. Garner Ave. ~~Goodlettsville~~ Madison TN 37115

(In item B below, place the FULL NAME of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the additional names, positions, and places of employment of any additional defendants.)

B. Defendant: Arvil Chapman; Hank Indman, Amber Bass; Tommy Mize; Daniel Johnsen; Robin Todd; Leigh Staggs; Richard Burke

Official position: S.C.C.F Warden; Senior Corr. Officer; Correctional Officer; Captain
P.O. Box 279, Clifton, TN, 138425

Place of employment: South Central Correctional Facility (S.C.C.F)
Clarence Potts / Chief of Security / S.C.C.F;

C. Additional defendants: Gregory Keeton / Gang Coordinator / S.C.C.F; Wendy Ashe / Medical Director / S.C.C.F Medical Department; Jessica McElroy / Grievance Chairperson / S.C.C.F; Christopher McClain / Chief of Security / S.C.C.F; Derrick Schofield / Commissioner of Tenn. Depart of Corrections (T.D.O.C) / T.D.O.C Rachel Jackson Building 6th Floor; Tenn. Department of Corrections; Corrections Corporations of America (C.C.A.); South Central Correctional Facility, Medical Department.
320 Sixth Ave. North Nashville, TN — 37243-0465

## IV. STATEMENT OF CLAIM

10 Burton Hills Blvd.
Nashville, TN 37215

(State here as briefly as possible the FACTS of your case. Describe how EACH defendant is involved. Include also the names of other persons involved, dates and places. DO NOT give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.) Section 1 (1-16)

1) On Sept. 1st, 2013 at South Central Correctional Facility (S.C.C.F) a private contractor run by Corrections Corporations of America (C.C.A.), Inmate William L. Jenkins was seriously injured by being stabbed in the chest and face with a 5 inch knife which resulted in nerve damage and the lost of mobility in my right shoulder.

2) This was a gang related event which stemmed from an accumulation of prior gang related events that occured over a period of 2 months leading up to this event. During this period of 2 months there were several gang related stabbings resulting in serious injury or death.

3) Due to the increase in gang violence, on multiple (3) occasions several S.C.C.F Officials including but not limited to Gang Coordinator Gregory Keeton; Senior Officer (S.C.O.) Hank Indman; S.C.O. Robin Todd; S.C.O. Amber Bass; Captain Daniel Johnson; Chief of Security Christopher McClain all met with several inmates who they believed were prominent gang members. The inmates whom I'm aware of that met with the above named officials are myself inmate (I/M) William L. Jenkins #432967; I/M Billy Burson #483611; I/M Chris Kelly #410142; I/M Kendric Henderson #455788; I/M Jermie Thomas #493381; I/M Grayal Lewis #394793; I/M Jermaine Driver #302281; Steve McClain #250548; I/M Demarice Beasley #471604,

4) During these meetings (some of which were held in the S.C.C.F Conference Room), the above named S.C.C.F Officials named above ~~were~~ stated they had been instructed by S.C.C.F Warden Arvil Chapman to meet

Case 1:14-cv-00053 Document 1 Filed 04/16/14 Page 3 of 26 PageID #: 3

with myself and the above named inmates in an attempt to contain the recent increase in gang violence. The above named S.C.C.F Officials also stated that the state was threatening to come in to regulate and that they "didn't want the state comming in and telling them how to run things" and that it would be "bad for everybody if the state had to intervene".

5.) The above named S.C.C.F Officials then told myself and the other above named inmates to "control our homeboys" and to exercise our supervisory authority over the other inmates in order to keep the facility from being locked down and to "keep the state out".

6.) Although these particular meetings in mention were held in response to the escalating level of gang violence, it should be noted by the court that these methods are regular procedural practices at this facility and that it is customary for S.C.C.F officials while acting under the instruction of their Warden Arvil Chapman and their respective scopes of employment, to rely solely on the assurances of gang members as a deterrent to serious threats of gang violence.

7.) Because these meetings were conducted on multiple occasions during this 2 month period and were infact delegated by the S.C.C.F Warden Arvil Chapman in direct response to actual acts of gang violence that were occurring during this 2 month period, it is a clear indication that these S.C.C.F officials were well aware of a serious risk or threat to the health and safety of myself and the other inmates at this facility.

8.) The fact that these S.C.C.F officials felt it was necessary to conduct these "Gang Meetings" on a much larger scale than usual, coupled with the fact that the state/Tenn. Department of Corrections (T.D.O.C.) was threatening to intervene not only indicates S.C.C.F officials' awareness of the serious threat to the safety of myself and the other inmates at this facility, but it also indicates the state's/T.D.O.C's awareness of the potential threat to the health and safety of the inmates at this facility and it indicates that both S.C.C.F and the state/T.D.O.C considered the threat to be substantial and serious in nature, but failed to act reasonably in spite of this.

9.) In addition to the group meetings, 2 to 3 weeks prior to the incidents that occurred on Sept. 1st 2013 (which resulted in the stabbings of myself and 6 other inmates including the death of one inmate), S.C.O. Robin Todd and Captain Daniel Johnson met privately with myself and the aforesaid named inmates. Both officials stated that they had been instructed by S.C.C.F Warden Arvil Chapman to meet with us and upon doing so they/S.C.O Todd & Cpt. Johnson disclosed to myself and the aforesaid named inmates that they had received several reports from multiple sources that there was going to be a gang riot between the Bloods and the Crips. They then told us to "control our homeboys" and to stop it from happening so that the state wouldn't get involved and so that the facility wouldn't have to be locked down.

10.) I then communicated to S.C.O Todd and Cpt. Johnson that it was difficult to control every inmate because so many inmates were new arrivals at the facility but that I would do my best. Captain Daniel Johnson responded "that's good enough for me" and allowed me to return to my self and other inmates at this facility at an even greater risk to our lives this and safety because the information was disclosed to several inmates who maybe very well not had any knowledge that such a risk existed. And in doing so it not only increased the level of tension between the two gangs which may or may not have existed before but it also alerted and alarmed both gangs into a heightened state of panic and fear of being attacked by opposing gangs.

11.) The disclosure of such security sensitive information was not only reckless but it also placed myself and other inmates at this facility at an even greater risk to our lives this and safety because

12.) This then lead to some inmates feeling the need to arm themselves with weapons for protection from what was portrayed by S.C.O Robin Todd and Captain Daniel Johnson, to be an imminent threat to our safety and an imminent danger to our lives. It also led some inmates to feel the need to attack before being attacked which is essentially what happens.

13.) Therefore I am within reason in my assertment that the disclosure of such security sensitive information to several inmates essentially led to and caused the events that occurred on Sept. 1st 2013 which resulted in my being seriously injured and permanently injured because I can no longer fully rotate or lift my right arm nor can I lift heavy object with my right arm. I am also currently being treated for mental injuries. I've been diagnosed with Post Traumatic Stress disorder, paranoia, and anxiety. I also suffer from night terrors and insomnia from fear of dying in my sleep. I am currently being medicated with 100 mg of Zoloft and undergoing Psychological counseling/monitoring.

14.) Whether my assertment that S.C.C.F officials were completely, partially, directly, or indirectly responsible for my attack is accurate or inaccurate, there's no denying their involvement. There's also no denying that both the S.C.C.F officials and the state/T.D.O.C were fully aware of the serious and substantial risk to the health and safety of myself and the other inmates at this facility. It's also very likely that the state/T.D.O.C is fully aware of the unconstitutional procedural practices committed by this facility at such transgressional times such as these. This supplemental assertment is supported by the fact that each of these above named S.C.C.F officials stated that they were acting under the instruction and approval of the S.C.C.F Warden Arvil Chapman who is by law T.C.A § 41-21-220, required to report all deaths and injuries and all the facts and circumstances thereof directly to the Commissioner of T.D.O.C Derrick Schofield, within in 10 days of the events occurence.

15.) So therefore, not only should the officials named above be held responsible for their failure to act reasonably in response to an apparent and imminent danger, but since these officials were acting under and within their respective scopes of employment and following the procedural methods and practices established and approved by their respective departments T.D.O.C and C.C.A, so should these departments, T.D.O.C and C.C.A, be held municipally liable for their having full knowledge of a serious and excessive threat/risk to the health and safety of myself and the other inmates under their care, but failing to act reasonably or take administrative/corrective action to abate the threat and as a result, inmate William L. Jenkins #432907 was seriously and permanently injured.

16.) Therefore I am suing each of the officials named above, in their individual and official capacities, as well as the Department who employ them, (4) Tenn. Department of Corrections and Corrections Corporations of America seeking compensatory and punitive damages for their collective and reckless disregard for the serious need for safety, for their deliberate indifference to the serious and excessive threat/risk to the health and safety of myself and the other inmates at their facility/S.C.C.F, and for endangering the lives of myself and the other inmates at their facility/S.C.C.F by disclosing security sensitive/security threat group (violent nature) information directly to security threat group members in reckless disregard for safety.

# Section 2 A(1-9)-B(1-7)

A.1) After being stabbed in the chest and face on Sept. 1st, 2013 in Gemini A pod at South Central Correctional Facility (S.C.C.F.), I inmate William L. Jenkins #432967 was escorted out of the cell 208 by Correctional Officer (C.O.) Tommy Mize after the Facility was locked down.

2) Before exiting the pod C.O. Mize attempted to place hand restraints on me but was instructed by S.C.O. Indman to allow me to proceed without the hand restraints due to my serious injury. C.O. Mize complied with these instructions until exiting Gemini Building. Once outside and out of S.C.O. Indman's line of sight, C.O. Mize again attempted to place the hand restraints on me.

3) Before complying I explained to C.O. Mize that I was already in extreme pain and that I needed my hands to remain free because I was bleeding profusely from my chest puncture and I needed to apply pressure to my wound so that I would not bleed to death. I also reminded him of the instructions he had been given by his superior S.C.O. Hank Indman, to allow me to proceed without hand restraints and I pointed out to him the fact that inmate Jermaine Driver #302281 who was also injured and had just been escorted out of the same pod Gemini A only minutes prior, was allowed to proceed to medical without hand restraints.

4) C.O. Mize ignored all of this and insisted that it was proper protocol to place me in hand restraints and that he was following procedures. I again attempted to reason with C.O. Mize stating all the same reasons I had stated previously but to no avail.

5) C.O. Tommy Mize then stated that he would NOT escort me to medical unless I allowed him to place me in hand restraints and because several minutes had already passed and I was rapidly loosing blood to the point that the entire front side of my shirt was covered in blood, I did allow C.O. Mize to place me in hand restraints.

6) Upon placing me in the hand restraints C.O. Mize secured them as tight as the hand restraints would allow to the point they were directly touching my wrists on all sides and squeezing. I informed C.O. Mize that the hand cuffs were entirely too tight and seemed to be cutting off the circulation in my wrists but this too was ignored.

7) Because C.O. Tommy Mize disregarded the instructions that were given to him by his superior S.C.O. Hank Indman by placing me in hand restraints which prevented me from applying pressure to my rapidly bleeding wound and placed me at serious risk to my future health, C.O. Mize was deliberately indifferent to my serious medical condition and he intentionally caused the wanton and unnecessary infliction of pain by his reckless disregard for my serious medical condition and therefore violated the 8th Amendment Cruel and Unusual Punishment - Deliberate Indifference clause.

8) Also C.O. Tommy Mize's refusal to allow me access to medical treatment unless I complied with the seriously unreasonable condition of being placed in hand restraints not only constitutes deliberate indifference but it also violates the 14th Amendment -Equal Protection Clause because I was treated unequally to inmate Jermaine Driver #302281 who had also been escorted to medical from the same pod but was not forced to wear hand restraints.

9) Because C.O. Tommy Mize exercised his own discretion but also stated that he was following the procedures set forth by T.D.O.C and C.C.A., I am suing C.O. Tommy Mize in both his individual and official capacities and I am suing both T.D.O.C and C.C.A. and holding them both municipally liable for the actions of their employee. I must also point out that I was not at any time behaving aggressively or violently therefore there was no justification for inequal treatment.

B.1) Upon arriving to the front door of medical C.O. Tommy Mize would not allow me to enter, stating that he had been instructed to make me wait outside. I repeatedly asked C.O. Mize to call a nurse and inform them that I needed immediate medical attention because I was loosing alot of blood and I was afraid that I would bleed to death as I had just witness my friend Gerald Ewing bleed to death in a matter of minutes only moments prior, but C.O. Mize ignored these requests.

2) As more and more time passed, I begin to feel dizzy due to the excruciating pain I was experiencing and the excessive loss of blood. I again asked C.O. Mize to call a nurse and explained to him my concerns and again C.O. Mize ignored these requests. At this point I genuinely began to fear for my life because I was affraid that I was going to bleed to death and no one aside from C.O. Mize knew I needed help. Paranoia began to set in, I began experiencing difficulties in breathing, which only worsened my condition.

3) In addition to being forced to wait outside, officers began allowing inmates to exit the chow hall in lines of 20 or 30 inmates at a time. None of these inmates were in any kind of restraints which placed me at an even greater risk of injury because there were several gang riots that broke out all over the Facility (S.C.C.F.) on that day Sept. 1st 2013 and the largest of those incidents occurred in the chow hall where those inmates were currently exiting from.

4) There was clearly and obviously a serious risk to my health and safety due to the recent chain of events and because these inmates were not in any restraints and I was in restraints and forced to wait outside I was left completely vulnerable to just such an attack. This was clearly a reckless disregard for safety, a deliberate indifference to the serious need for safety, and a deliberate indifference to a serious risk to my future health and safety.

5) My suspicions that no medical personel was aware of my need for medical treatment was later confirmed by nurse Brandy Kelton who come to the door to Let in 1/M T. Frazier # 291388. Upon opening medical door nurse Kelton noticed my injuries and immediately asked C.O. Mize why I was wanting outside, C.O. Mize again responded that he had been told to do so- Nurse Kelton then instructed C.O. Mize to escort me into medical immediately because I was going to <del>die</del> an hour had passed before I made it <del>in</del> into the ambulance.

6.) Because C.O. Tommy Mize recklessly disregarded my serious need for safety, placed me in harms way by forcing me to stand outside in hand restraints while inmates who had just been involved in a gang riot were allowed to roam freely with no restraints within the same vicinity as me. I intentionally delayed my access to medical treatment, and was deliberately indifferent to my serious need for safety and the serious and substantial risk to my future health and safety. I thereby am suing C.O. Tommy Mize seeking compensatory and punitive damages because his actions contributed to my mental injuries of Post Traumatic Stress Disorder, Paranoia (fear of dying), and anxiety.

7.) Also because C.O. Tommy Mize exercised his own discretion but again stated that he was following procedures set forth by Tenn. Department of Corrections (T.D.O.C) and Corrections Corporations of America (C.C.A.), I am suing C.O. Tommy Mize in both his individual and official capacities and I'm suing the companies who employ him, T.D.O.C and C.C.A holding them municipally liable for his actions which resulted in my mental injuries and violated the 8th Amendment Deliberate indifference standard.

## Section 3 (1-12)

1.) After arriving at Wayne County Hospital I underwent surgery and received several stitches and staples. Before leaving the hospital I was instructed by the doctor to sanitize my wounds and change my bandages daily to avoid infection.

2.) I communicated this to the medical personel immediately after receiving my first dosage of pain medication, which was the next morning after arriving back to the facility S.C.C.F. The nurse stated that someone else would clean my wounds and change my bandages, but this never happened.

3.) I was put on pending investigation and placed in the segregation unit on 24 hour lockdown. For the next 8 days I was brought pain medication twice daily. Upon each dosage I asked the acting nurse to clean my wounds and change my bandages but was told each time that someone else would do it, but still it was never done.

4.) Also during this period of 8 days I was not permitted to shower due to the facility being on lock down which only served to further complicate the healing process because my wounds bled and drained fluids constantly and I was unable to wash off the crusts.

5.) By the 4th day the dried blood and drainage began to build up around the wound and the staples and it became extremely painful to sleep or move because the dried blood and drainage had become intertwined with the staples so that any amount of movement or change in position would pull at the staples or reopen the wound. I complained to the medical personel who still brought me pain medication twice daily but still to no avail.

6.) By the 5th day the pain and discomfort had became so intense due to the excessive build-up that had formed around the wound I began to fear that possible infection had started to set again in. I again complained to the medical personel who brought my pain meds. and was again told that someone else would do it.

7.) Due to the medical departments constant denial of medical treatment I wrote a letter to my mother and Fiancee (Patrice Jenkins & Jazmine Buley) and explained to them the level of mistreatment, I was receiving.

8.) After the 7th day of receiving no medical treatment for my wounds and not being permitted to shower I attempted to seek medical treatment one last time by speaking with both the medical personel who brought my meds that morning and night as well as the senior officer Brantly who worked that day and was again unsuccessful at obtaining medical treatment.

9.) On the 8th day on Sept. 8th I wrote a grievance (grievance # 266729-19908) complaining of the mistreatment I was being subjected to. On the same day I was called to medical by Nurse Brandy Keeton. I originally assumed that I was called to medical due to the grievance I had sent out earlier that day but upon arrival at the clinic I discovered that I had infact been called to medical because it was time to remove my staples.

10.) Upon inspection of my wounds Nurse Brandy Keeton immediately noticed that my wounds had not been cleaned nor had the bandage been changed. She questioned why my wounds had not been cleaned and I explained to her that I had tried several times to no success to get my wounds tended to. Nurse Keeton shook her head in obvious disdain.

11.) My wound had become so corroded with crusts, from dried blood and fluid drainage that Nurse Keeton could not remove the staples without 1st removing the scabs. This was an extremely painful process that reopened certain areas of my wound that had not completely healed.

12.) Due to the S.C.C.F Medical Department's collective denial of medical treatment, deliberate indifference to my serious medical condition and serious need for medical treatment, and medical negligence and reckless disregard for my future health and the risks thereof such as infection and because these acts were collectively committed by several members of the medical department. I William L. Jenkins #132967 am suing the S.C.C.F Medical Department and the medical Director Wendy Ashe for their unconstitutional actions which encause the wanton and unnecessary infliction of pain and suffering. I am seeking both punitive and compensatory damages.

1.) On Sept. 8th 2013 I wrote a grievance concerning the reckless disregard for my safety and well being and the mistreatment I was subjected to by South Central Facility Off-icials (S.C.C.F.) and the S.C.C.F medical staff, grievance # 266729-19908.

2.) The grievance was deemed inappropriate per policy 501.01 section V1.C-1 multiple issues by grievance chairperson Jessica McElroy and was returned to me on 9-20-13 by S.C.O Leigh Staggs.

3.) In the grievance I did indicate that I fully intended to file suit against the facility and that I wished for my grievance to be forwarded to the highest level so that I could fully exaust all grievance remedies and proceed with the litigation.

4.) This was commented on by S.C.O Leigh Staggs who stated that I was "wasting my time and her time" after I indicated to her that I wished to appeal the grievance to level 2.

5.) I did not respond to S.C.O Staggs comment because she seemed upset that I wished to app-eal the grievance to the next level and I wanted to avoid a confrontation with her.

6.) After signing and checking the yes- appeal box I placed the grievance back in the door. S.C.O Staggs aggressively snatched the grievance from the door and abruptly stormed off my door mumbling something under her breath.

7.) On Oct. 1st 2013, S.C.O Leigh Staggs again returned with the warden's response to my grievance, which concurred with the original response. S.C.O. again had a very rude and confrontational demeanor ~~demeanor~~ when she stated that I(Staggs) if I wanted to appeal it to hurry up and sign it and stick it back out the door. I indicated to her that I did wish to appeal it to the 3rd and final level but before signing it I opted to read the response which made S.C.O Staggs very angry.

8.) S.C.O Staggs stated I could either sign and return the form immediately or she would dis-qualify it. I attempted to explain to S.C.O Staggs that I wished to attach supplemental clarification to the form which is my right according to the warden's response and that it would only take me 5 minutes to do so.

9.) S.C.O Leigh Staggs then became very belligerent and irrate and again stated that if I did not immediately return the grievance that it would be disqualified. I did proceed to sign and date the form all the while attempting to reason with S.C.O Staggs concerning the supplemental clarification that I wished to attach to the form.

10.) S.C.O. then spatted that she did not have time for this sh*t and that my grievance was disqualified and walked off the door to my left. I stuck the warden's response in the door knowing that she would have to walk back past my door in 102 cell, in order to exit the pod. Upon exiting the pod S.C.O Staggs did walk past my door but ignored the form that was sticking out of my door. I called her name several times and knocked on my door but S.C.O Staggs ignored this as well.

11.) I called for the Senior Officer in my unit S.C.O. Brantly and explained to him the situation. S.C.O did allow me to complete the supplemental clarification and attach it to the war-den's response and placed it in the grievance box on that same day Oct. 1st 2013.

12.) On the 4th of Oct. 2013 I received a response from S.C.O Staggs stating that my grievance had been disqualified. Attached to this response was a witness statement prepared by C.O Richard Burke claiming to have witnessed my alleged refusal to return the warden's response. This was impossible and fraudulent in nature because C.O. Burke had not accompanied S.C.O Staggs at anytime during this grievance review. I had in fact witnessed C.O Burke and C.O. Mooney ~~escorting~~ exit the pod escorting I/M Armstrong from (105 H-C) to medical. Therefore C.O. Burke was in fact not even in the pod (H-C) during me and S.C.O Staggs' disagreement.

13.) Therefore both S.C.O Leigh Staggs and C.O. Richard Burke are both guilty of conspiring aga-inst me and falsifying documents. It was also later brought to my attention by inmate Armstrong from cell H-C 105 that S.C.O. Staggs had in fact come down to medical and asked C.O Burke to write the statement.

14.) For these reasons I wrote a grievance stating these facts (grievance # 267642-20028) and because cameras are always trained on the pod entrance doors, and the entrance and exit doors of the segregation building and medical center and would validate my claims. I asked in my grie-vance that the said cameras be reviewed to prove that C.O. Richard Burke had not accomp-anied S.C.O Leigh Staggs at anytime during this incident and that S.C.O Staggs and C.O. Burke had in fact given false testimony and conspired against me in possible retaliation for the contents of the previous grievance which S.C.O seemed upset about from the start.

15.) However, both the grievance chairperson Jessica McElroy, ~~and~~ and Chief of Security C. Potts decided against ~~pulling~~ camera footage to validate my claims. I then appealed to the highest level to the T.D.O.C. Commissioner Derrick Schofield who also neglected to pull the camera footage or investigate the situation.

16.) Therefore I, inmate William L. Jerkins #132967 am suing both S.C.O Leigh Staggs and C.O. Richard Burke in their individual and official capacities for conspiring against me, for falsifying documents, for discriminating against me and retaliating against me for exercising my right under the 1st Amendment to utilize the grievance procedures, and for abusing their power and acting illegaly and unethically within their scopes of employment.

17.) I must also point out that S.C.O Staggs did admit to me that she went to the front office/mail room and removed my appealed warden's response from the mail pile to prevent it from being sent to the Commissioner (grievance # 266729-19908) which clearly exceeds her jurisdiction.

18.) I am also suing grievance chairperson Jessica McElroy and Chief of Security C. Potts and T.D.O.C. Commissioner Derrick Schofield for being fully made aware of the corrupt actions of their empl-oyees and failing to correct them and also for having full and complete access to the evidence (camera footage) required to prove the corruption of their employees and having full knowledge that the evidence exists but completely neglecting to review or consider it, which constitutes a blatant disregard for institutional order. I am therefore suing each of the above named individuals in their

V.   RELIEF

(State BRIEFLY exactly what you want this Court to do for you.  Make NO legal arguments.
Cite NO cases or statutes.)

I'm seeking compensatory and punitive damages totaling #500,000.00, or minimum wage from the date of Sept. 1st until retirement at 8 hours a day to compensate me for the physical and mental injuries I've sustained which are permanent and could affect my future ability to work, or whatever the maximum amount is, covered under their department's liability insurance.

SIGNED THIS _____ 4th _____ DAY OF _____ April _____, 20 14 .

_____
SIGNATURE OF PLAINTIFF

I swear (or affirm) under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief. Further, I state these statements are made under the penalty of perjury.

_____
William L. Jenkins          , Pro-Se
#432967

State of TENNESSEE )
                   )
County of MORGAN   )

SWORN TO AND SUBSCRIBED before me
this the 4th day of APRIL 2014

_____
NOTARY PUBLIC

THOMAS DAVID HOGAN
STATE OF TENNESSEE
NOTARY PUBLIC
MORGAN COUNTY

page 8

14359



**STATE OF TENNESSEE**
**DEPARTMENT OF CORRECTION**
**6TH FLOOR RACHEL JACKSON BUILDING**
**320 SIXTH AVENUE NORTH**
**NASHVILLE, TENNESSEE 37243-0465**
**OFFICE (615) 741-1000 EXT. 8180  •  FAX (615) 253-1668**

75 - A - 213

## MEMORANDUM

Inmate Name: _____ William Jenkins _____ TDOC Number: ___ 492 962 ___

Institution: _____ SCC _____ Housing Unit: ___ Max ___

Institution Grievance Number: __ 20263 __ TOMIS Grievance Number: __ 265047 __

Commissioner's Response and Reasons:

The Director of Health Services has reviewed the grievance and:

☐    Concur with Warden      ☑ Concur with Supervisor      ☐    Concur with Committee

_____ 1-31-14 _____ _____ _____
Date                                    Deputy Commissioner of Operations

DS-6

RECEIVED
JAN 3 1 2014



# TENNESSEE DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE RESPONSE

Jenkins William _____ 432907 _____ SCCF/MCCX _____ 209515- 202203
NAME _____ NUMBER _____ INSTITUTION & UNIT ____ GRIEVANCE NUMBER

Summary of Evidence and Testimony Presented to Committee _____

_____

Inmate Grievance Committee's Response and Reasons  Inappropriate per policy
501-01 Section VI I-1 Same or Similar

_____

12/13/13 _____ J McElnoy _____ _____
DATE _____ CHAIRMAN _____ MEMBER

_____ _____ _____
MEMBER _____ MEMBER _____ MEMBER

===============================================================================

Warden's Response:     Agrees with Proposed Response     ☑

Disagrees with Proposed Response     ☐

If Disagrees, Reason(s) for Disagreement _____

_____

Action Taken; Concur w/ Super

DATE: 12/19/13 _____ WARDEN'S SIGNATURE: _____

Do you wish to appeal this response?     _____ YES     _____ NO

If yes:   Sign, date, and return to chairman for processing.  Grievant may attach supplemental clarification of issues or rebuttal/reaction
          to previous responses if so desired.

Appealed in lm
absence
_____ _____ 1-14-14 _____ J McElnoy
GRIEVANT _____ DATE _____ WITNESS

===============================================================================

Commissioner's Response and Reason(s): _____

_____

_____

_____ _____
DATE _____ SIGNATURE

Distribution Upon Final Resolution:

     White - Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod - Commissioner

CR-1393 (Rev. 3-00) _____ RDA 2244



# TENNESSEE DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE



INP/ Hsv
Asve

NAME: William Jenkins

NUMBER: 432967

INSTITUTION & UNIT: S.C.C.F ~~HE-102~~ max

DESCRIPTION OF PROBLEM: On 10-1-13 I placed a signed and dated Warden Response/Appeal to grievance number #266729-19908. Attached to the Warden Response/Appeal was supplemental clarification as to why I disagreed with the Warden's response and why

REQUESTED SOLUTION: I would like to undergo some form of physical rehabilitation. I would also like to be administered mental treatment as well as medication to help stabilize my mental conditions of anger, depression, and anxiety/post traumatic stress.

Signature of Grievant

Date: 11-20-13

·····································································

*TO BE COMPLETED BY GRIEVANCE CLERK*

Grievance Number: 269 515-20263

Date Received: 11-22-13

Signature Of Grievance Clerk: *(signature)* McElroy

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: _____

AUTHORIZED EXTENSION: _____
New Due Date _____      Signature of Grievant _____

·····································································

## INMATE GRIEVANCE RESPONSE

Summary of Supervisor's Response/Evidence: _____

_____

Chairperson's Response and Reason(s): Inappropriate per policy 501-01 Section VI I-1 Same or similar

DATE: 12/9/13    CHAIRPERSON: *(signature)* McElroy

Do you wish to appeal this response? _____ YES _____ NO

If yes;   Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

Appealed in my Absence I'm @ max

GRIEVANT

Date: 12-13-13

WITNESS: *(signature)* McElroy

Distribution upon final resolution:

White – Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)

CR-1394 (Rev. 3-00)                    Page 1 of 2                    RDA 2244



DESCRIPTION OF PROBLEM: I wish to appeal to level 3. It's been over a month since I sent the appeal out and I still have not received a response. Since the incident of Sept 1st 2013 in which I was stabbed in the face and chest I have been experiencing nightmares and anxiety attacks where I'm frequently awaking out of my sleep sweating all over my body and having difficulties catching my breath from fear of dying in my sleep. I believe this is a result of the treatment I received from C.O. Mize who forced me to stand outside of medical in handcuffs while I bled freely for almost 45 mins, directly after I was severely injured on Sept. 1st 2013. Because I was forced to wear handcuffs I was unable to apply pressure to my wounds which was bleeding profusely. I begged C.O. Mize several times to get or give me some medical aid because I was afraid that I was going to bleed to death because so much time was passing and I had still yet to be seen or medically assessed by anyone from the medical department. C.O. Mize ignored my concerns and stated that he had been instructed to make me wait outside. As more time passed and it became more difficult to breathe I started to fear that none of the nurses knew I was in need of medical attention. I again pleaded with C.O. Mize to at least let the nurses know I was outside and needed some medical aid. He again refused stating that he was doing as he was told. A few moments later as another inmate was being escorted in, Nurse Keeton came to the door to let him in. It was at this time that she noticed me and how badly I was bleeding. She asked to see my wounds and after I showed them to her she immediately instructed C.O. Mize to escort me inside because I was going to need surgery. She also questioned C.O. Mize as to why I was standing outside and had not been brought in yet. C.O. Mize told her that he had been instructed to make me wait outside. Since the incident of Sept. 1st 2013 I have been experiencing night terrors and struggling with feelings of deep depression, anger, and anxiety. I explained this as well as the circumstances that led to my emotional distress, to the psych doctors and they informed me that I was possibly suffering from post traumatic stress disorder. They then referred me to Dr. Turner whom I met with on 11-11-13. She too says that I'm suffering from Post Traumatic Stress but she said that she didn't want to prescribe me anything because other inmates have been known to abuse such medications. I feel that this was negligent and that it is very irrational to base my need to be medicated off other inmate's actions. Since my injury which occurred on Sept 1st to the present date I have also lost mobility in my right arm and can no longer lift heavy objects. I believe this is a direct result of the injuries I sustained on Sept. 1st 2013 as well as the treatment I received on that day up until now. From the time immediately after I was assaulted to the time I was taken to and from the hospital, I was forced to wear full body restraint causing the unnecessary and excessive infliction of pain. I believe this was cruel and unusual punishment and deliberate indifference to my serious medical condition. At no time was I behaving violently or aggressively.

Distribution upon final resolution:

White – Inmate Grievant     Canary – Warden     Pink – Grievance Committee     Goldenrod – Commissioner (if applicable)



Ashe



**TENNESSEE DEPARTMENT OF CORRECTION**

**RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT**

DATE: 11-22-13

Please respond to the attached grievance, indicating any action taken.

Date Due: 11-27-13

269515-202663    William Jenkins    432967

Grievance Number        Inmate Name        Inmate Number

All inmates that were involved in the incident on 9-1-13 where triaged in medical based on need. You are being followed by mental health. The provider did not feel you required medication at this time however if you would like to discuss your concerns with the provider I advise you to sign up on sick call and ask to be reffered to the mental health provider

SIGNATURE

DATE: 12-2-13

CR-3148 (Rev. 3-00)                                                                 RDA 2244

13263



**STATE OF TENNESSEE
DEPARTMENT OF CORRECTION
6TH FLOOR RACHEL JACKSON BUILDING
320 SIXTH AVENUE NORTH
NASHVILLE, TENNESSEE 37243-0465
OFFICE (615) 741-1000 EXT. 8180 • FAX (615) 253-1668**

25-A-213

**MEMORANDUM**

Inmate Name: _William Jenkins_          TDOC Number: _472962_

Institution: _SCF_          Housing Unit: _He was MCCX_

Institution Grievance Number: _20028_          TOMIS Grievance Number: _262642_

Commissioner's Response and Reasons:

The response of the Committee is appropriate.

The grievant failed to substantiate allegation(s) presented to the satisfaction of the Grievance Committee. Additional information has not been presented which indicates the Level 2 response was inappropriate.

☑ Concur with Warden     ☐ Concur with Supervisor     ☐ Appeal Denied

_12-18-13_
Date

_signature_
Deputy Commissioner of Operations

DS-10

RECEIVED

JM



# TENNESSEE DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE RESPONSE

Jenkins, William    432907    BCCF/HC102    267042-20028
NAME                NUMBER     INSTITUTION & UNIT    GRIEVANCE NUMBER

Summary of Evidence and Testimony Presented to Committee _____

_____

Inmate Grievance Committee's Response and Reasons  Board Copers with Supervisor.

_____

11-12-13    Junica McElroy    Jm Mich Hensley
DATE         CHAIRMAN          MEMBER

Brenda S Claperton    T. Henn    Charlen Ridly
MEMBER               MEMBER      MEMBER

=====================================================================

Warden's Response:    Agrees with Proposed Response    [✓]

Disagrees with Proposed Response    [ ]

If Disagrees, Reason(s) for Disagreement _____

_____

Action Taken: Cever w/ Chif Ruth + Sto attached Central note

DATE: 11-14-13    WARDEN'S SIGNATURE: _____

Do you wish to appeal this response?    ✓ YES    _____ NO

If yes:   Sign, date, and return to chairman for processing.  Grievant may attach supplemental clarification of issues or rebuttal/reaction
          to previous responses if so desired.

William Jenkins    11-20-13    J M Elroy
GRIEVANT           DATE         WITNESS

=====================================================================

Commissioner's Response and Reason(s): _____

_____

_____

_____              _____
DATE                                   SIGNATURE

Distribution Upon Final Resolution:

White - Inmate Grievant    Canary - Warden    Pink - Grievance Committee    Goldenrod - Commissioner

CR-1393 (Rev. 3-00)                                        RDA 2244



Reg-SST
Potts



**TENNESSEE DEPARTMENT OF CORRECTION**

**INMATE GRIEVANCE**

William Jenkins            432967            S.C.C.F HC-102
NAME                       NUMBER           INSTITUTION & UNIT

DESCRIPTION OF PROBLEM: I recieved notification today Oct. 4 2013 that Senior Staggs has disqualified my grievance 266729-19908 claiming that I refused to return the warden response along with a witness statement attached, signed and dated

REQUESTED SOLUTION: That the cameras in mention be reviewed to validate my claims. That both Senior Staggs and c/o Burke be fired. That someone other than Senior Staggs conduct the grievance reviews of this grievance. And that this grievance be forwarded to the highest level of authority.

ID# 8975-957

_____                    10-4-13
Signature of Grievant                       Date

=================================================================

*TO BE COMPLETED BY GRIEVANCE CLERK*

267642-20028        10-7-13        JMcElroy
Grievance Number    Date Received   Signature Of Grievance Clerk

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: _____

AUTHORIZED EXTENSION: _____   _____
                      New Due Date               Signature of Grievant

=================================================================

**INMATE GRIEVANCE RESPONSE**

Summary of Supervisor's Response/Evidence: Im refuse a to give form back

Chairperson's Response and Reason(s): Concur W Supervisor

DATE: 10/10/13   CHAIRPERSON: JMcElroy

Do you wish to appeal this response? ✓ YES _____ NO

If yes: Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

_____   10-17-13   _____
GRIEVANT                   DATE        WITNESS

Distribution Upon Final Resolution:

Case 1:14-cv-00053 Document 1 Filed 04/16/14 Page 16 of 26 PageID #: 16
White (Grievant) Canary (Warden/Superintendent) Pink (Commissioner/Designee) Goldenrod (Inmate Grievance Committee Chairman) (if applicable)

CR-1394 (Rev. 3-00)                Page 1 of 2                RDA 2244



**TENNESSEE DEPARTMENT OF CORRECTION**

**INMATE GRIEVANCE**     **(continuation sheet)**

DESCRIPTION OF PROBLEM: by, C.O. Richard Burke /ID# 18975957 claiming that he witnessed me refuse to give back my grievance form. This is completely untrue. I simply asked Senior Staggs to give me a minute to write supplemental clarification of reaction to response, which is my right & she became irrate saying that she would not wait a that I could either sign and date the form immediately or it would be disqualified, I then tried to reason with her that this was my right and that I wished to attach this information to my appeal before turning it in. She then became more irate and proceeded to walk away from my door spatting that my grievance was disqualified. At no time did I say or indicate that I wished to discontinue my grievance nor did I refuse to return the appeal. I was simply attemptin to exercise my right to attach supplemental clarification and was not given the opportunity to do so due to Senior Staggs unprofessional belligerent nature. I did infact complete the appeal form attached with the supplemental clarification which was placed in the grievance box by Senior Brantley the acting Senior Official that day. it was also picked up the same day Oct. 1st 2013, in should have been turned in the same day which clearly shows that I did not refuse to return the warden's response nor did I intend to Senior Staggs was dishonest and had has abused her power. She futhermore commited an act of corruption by conspiring with C.O. Richard Burke /ID# 18975957 pursuading him to give false testimony by writing, signing, and dating an incident statement claiming to have witnessed me refuse to give back my appeal paper when he was infact not even in the pod or anywhere in the vicinity when this occurred. Therefore making it completely impossible for him to witness what he claims to have witnessed. I'm reques- ting that the HC pod cameras as well as the Skylab center core cameras be reviewed from Oct. 1st 2013, 11:00 A.M - 11:50 A.M. They will confirm that C.O. Burke was not anywhere in the Pod or building while Senior Staggs was in HC pod conducting grievance reviews. i've also recieved information that C.O. Burke was infact in medical along with C.O. Mooney, escorting I/m Armstrong /HC-104 and that Senior Staggs infact came to medical and asked C.O. Burke to write the incident statement claiming to have witnessed my refusal. More proof of Senior Staggs /C.O. Burke's corruption and deception. So I asked that the Medical entry cameras be reviewed as well during the same time frame of Oct. 1st 2013, 11:00 A.M - 11:50 A.M. This will further discredit C.O. Burke /Senior Staggs claims and verify that what I say is true. I feel that this was a retaliation attempt to disqualify my previous grievance # 266729 - 19908 due to the nature of it's contents and i feel that both Senior Staggs and C.O. Burke should be fired for conspiring together and falsifying documents which is highly unethical and likely illegal. This will be included in my lawsuit as additional evidence of the corruption in this facility.

Distribution Upon Final Resolution:

White - Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)

CR-1394 (Rev. 3-00)       Page 2 of 2       RDA 2244


Potts



**TENNESSEE DEPARTMENT OF CORRECTION**

**RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT**

DATE: 10-7-13

Please respond to the attached grievance, indicating any action taken.
Date Due: 10-10-13

267642-020038    William Jenkins    432967
Grievance Number      Inmate Name      Inmate Number

See attached contact note that was entered into Tomis on day of incident in question. No need to pull camera is documentation of incident exists. I/m should follow the directives of the staff to assist with process of grievances

_____ SIGNATURE      10-10-13 DATE

CR-3148 (Rev. 3-00)      RDA 2244

# GRIEVANCE HEARING SUMMARY

DATE: November 12, 2013   Grievance: <u>267642-20028</u>

Grievant:   <u>I/m Jenkins 432967</u>

Present:   Jessica McElroy            Grievance Coordinator
          Brenda Caperton            Staff Board Member
          Michele Hensley            Staff Board Member
          I/m Heard 337117          I/M Board Member
          I/m  Ridley 202670        I/m Board Member
          I/m Flemmings #474595     I/m Grievance Clerk

Grievant enters: Chairperson reads grievance, supervisor's response and the grievance solution. Procedures were explained.

This complaint is on: SCO Staggs

Grievant comments:
        Inmate stated that C/o Burks was not in the pod, he was with C/o Mooney in medical.

Board Questions:

        Board had no questions.

        Hearing Concluded.

247042-20028

```
LCDG                          CONTACT NOTES              DATE:  10/09/13
BI44Z17                       COMMENTS DETAIL            TIME:  08:41 AM

TOMIS ID:  00432967  JENKINS, WILLIAM L.
   Status:  ACTV    Sex:  M    Race:  B    Age:   25    Location:  SCCF

      Contact Date:  10/01/2013  Time:  11:00 AM
Supervision Type:  IN  INSTITUTION                     Site ID:  SCCF
   Contact Types:  JOIC QQQQ
Comments:
   SPOKE WITH I/M ON HIS GRIEVANCE FOR LEVEL 2 REVIEW.  UPON REVIEW I/M
   REFUSED TO RETURN THE WARDEN RESPONSE FORM. I ADVISED HIM IF HE DID NO
   T RETURN IT THE GRIEVANCE WOULD BE CLOSED OUT FOR FAILURE TO COMPLY
   WITH THE PROCEDURE.  I/M STILL REFUSED TO GIVE BACK THE FORM.  I/M
   WANTED TO WRITE AN ATTACHMENT WHILE I WAITED. I TOLD HIM HE COULD
   WRITE IT & TURN IT IN THE NEXT DAY & IT WOULD BE ATTACHED TO HIS
   GRIEVANCE. I/M STILL REFUSED TO RETURN WARDEN REVIEW SAYING I HAD TO
   WAIT FOR HIM TO WRITE HIS ATTACHMENT & PUT IT WITH HIS GRIEVANCE


NEXT FUNCTION:        DATA:
F1-HELP      F5-PREVIOUS  F9-QUIT    F10-REFRESH  F11-SUSPEND  F16-SCROLTOP
F20-SCROLLDN
BOTTOM OF LIST
```

Date: 10/9/2013 Time: 9:06:03 AM





# TENNESSEE DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE

William Jenkins                    432967          S.C.C.F HSA/C-102
NAME                                NUMBER              INSTITUTION & UNIT

DESCRIPTION OF PROBLEM: I feel that on the incident date of Sept. 1st 2013 up until Sept. 8th 2013 that my saftey and well being was disregarded, I was stabbed in the chest with a large knife my injury resulted in intense pain and excessive bleeding and clearly required immediate

REQUESTED SOLUTION: Foward to the highest authority so that I can exaust all grievance remedies. I would also like to contact my family.

_____                    9-8-13
Signature of Grievant                        Date

................................................................................................................

*TO BE COMPLETED BY GRIEVANCE CLERK*

260029-19908          9-12-13          Junica McElroy
Grievance Number      Date Received    Signature Of Grievance Clerk

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: _____

AUTHORIZED EXTENSION: _____        _____
                       New Due Date           Signature of Grievant

................................................................................................................

### INMATE GRIEVANCE RESPONSE

Summary of Supervisor's Response/Evidence: _____

_____

_____

Chairperson's Response and Reason(s): Grievance deemed Inappropriate per Policy 501.01 section VI I-1 multiple issues.

DATE: 9-18-13    CHAIRPERSON: J McElroy

Do you wish to appeal this response?    ✓ YES    ___ NO

If yes:   Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

_____          9-20-13          McElroy
GRIEVANT                           DATE              WITNESS

Distribution upon final resolution: On 10-1-13 I'm refused to return Warden response

White – Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)
                                                                          Witness statement
CR-1394 (Rev. 3-00)  upon review   Page 1 of 2                            Attached   RDA 2244
see contact note 10-01-13                                                 le stace



**TENNESSEE DEPARTMENT OF CORRECTION**

**INMATE GRIEVANCE**     **(continuation sheet)**

DESCRIPTION OF PROBLEM: medical attention which I did not recieve. In fact I was even forced to wait outside medical shackled in handcuffs while they attended to the other inmates that were injured that day. I was even forced to step aside by C.O mize who escorted me, so that another inmate could pass me and go into medical to recieve treatment as if his injuries were more severe than mines when they clearly were not. I was bleeding profusely and having difficulty breathing. I stated this several times to C.O. mize and asked for immediate medical attention because I was in fear of bleeding to death or choking on my own blood but was denied each time. Had I've had a punctured lung or a main artery, the amount of time that second it took for them to realize that I needed immediate medical attention (atleast 30 minutes) could have been fatal. In fact had it not've been for nurse Keeton stepping outside and noticing how bad i was bleeding and questioning C.O mize as to why I hadn't been brought inside and directing him to do so, I feel that I could've died because I had lost an excessive amount of blood and none of the C.O.S seemed to be concerned by that, even with me pleading for help. Furthermore, I've been back from surgery for 8 days now and no one has cleaned my wounds or changed my bandages which they were instructed by the doctor to do to prevent the possibility of infection. it's because of this that I feel that my saftey and well being is of no concern or priority to this facility and I also feel that I was denied medical treatment at a time it was needed the most which is a direct violation of my constitutional and institutional right to medical treatment. I've asked for several officers everyday for a grievance and up until now have been denied that as well. I've been cut off from contact with my family. My writing materials were removed from my personal property when I recieved it. This is my second time being critically injured while under the supervision of T.D.O.C. and I feel that this situation has been handled poorly and unprofessionally and with no regard to my health or well being. It's created a great deal of emotional distress and mental anguish, as well as a physical strain on my body. I realize that the grievance committee can not compensate me, tho' may I wish to be compensated so I'm requesting that this grievance be forwarded to the highest level so that all grievance remedies will be exhausted and so I can take the next step in this process. I fully intend to file suit against this facility as well as T.D.O.C. I am a victim in this case and there is no physical evidence to prove otherwise. So if I am retaliated against by this facility or any other department of the state for any portion on this matter, it will be documented and sent to anyone as evidence and used to my benifit in my law suit. Thank you for your time.

Distribution upon final resolution:

White – Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)



# TENNESSEE DEPARTMENT OF CORRECTION

## RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE: 9/12/13

Please respond to the attached grievance, indicating any action taken.

Date Due: 9/17/13

2606729-19908          Jenkins, William          432967
Grievance Number          Inmate Name          Inmate Number

I have carefully reviewed this grievance as
well as your medical file. The medical staff treated
inmates based on priority following the incident on
September 1st. As far as contacting your family
I suggest you speak with your case manager
for assistance.

Enis

_____
SIGNATURE

9-13-13
DATE

White - Inmate Grievant    Canary – Warden    Pink – Grievance Committee    Goldenrod – Commissioner

# INCIDENT STATEMENT

| Facility | SCCF | | Incident Number | |

| Incident Date | 10-1-13 | | Incident Time (HRS) | 1100 |

| Person Name | ID Number (Employee #/Inmate #/Civilian ID) | Person Type (Employee/Inmate/Civilian) | Person Role (Witness or Participant) |
|---|---|---|---|
| Richard Burke | 1F975957 | Employee | witness |

| Housing Location (For Inmates/Residents Only) | |

**Based on your own knowledge, what did you see, hear, and do?** I, C/ Burke, did witness inmate Jenkins 492967 refuse to give back his grievance form to senior Staggs while she was conducting out reviews

| Did you receive any injuries? YES or NO (If YES, Explain Below) | |

| Were you evaluated by medical? YES or NO | |

| Printed Name: | Richard Burke | | | |
|---|---|---|---|---|
| Signature: | *(signed)* | | Date: | 10-1-13 |
| Typed By: | | | Date: | |

**This section to be completed by CCA staff if the civilian/other or inmate/resident refused to complete the 5-1C.**

Place an "X" in the appropriate box:

| | Inmate/Resident refused to complete this 5-1C |
|---|---|
| | Civilian/Other refused to complete this 5-1C |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

| Employee/Witness Printed Name | | Date: | |
|---|---|---|---|
| Employee/Witness Signature | | | |

02/03/11

Proprietary Information – Not For Distribution – Copyrighted - Property of CCA

April 4th, 2014

RECEIVED
IN CLERK'S OFFICE

APR 16 2014

U. S. DISTRICT COURT
MID. DIST. TENN.

Clerk + Master Keith Throckmorton

United States District Court / Middle District of Tenn.

801 Broadway, Room 800

Nashville, TN 37203                          1:14-CV-53

RE: William L. Jenkins #432967 V. Tenn. Dep. of Corr; Corr. Corporations of America;

S.C.C.F Officials / Medical Department, Et. Al.

Dear Mr. Keith Throckmorton:

Enclosed please find for Filing: Original Copy of §1983 Complaint attached with

6 month Transaction Form, Certified Affidavit of Indergency, and application to proceed

in forma pauperis; An Extra Copy of Complaint and self addressed enveloped to be

"filed" stamped and returned to me after filing; a total of 17 Civil Summons

Forms completed for each of the Defendants named in the complaint; and 17

copies of the complaint for each of the Defendants named. Also included is a

copy of the 3 grievances that were filed and exausted in relation to the complaint.

The last grievance has not yet returned but it too was deemed inappropriate per policy

501.01 VI.H,5 (cannot award monetary compensation for injuries or property loss).

Due to the size of the entire package the package was mailed in 2 seperate enve-

lopes, in the 1st Envelope please find enclosed, the original complaint, a file copy, 3 griev-

ance Responses, and 7 copies of complaint for 1st 7 defendants and self addressed envelope.

In the 2nd Envelope please find 10 remaining copies of complaint for the 10 remaining

defendants. Please stamp filed on the extra copy and return in the enclosed

self addressed envelope. Thank You for your kind attention on this matter.

Sincerely and Respectfully,
Pro Se
William L. Jenkins #432967

William Jenkins
M.C.C.X. #432967
P.O. Box 2000
Wartburg, TN 37887



RECEIVED
IN CLERK'S OFFICE

APR 16 2014

U. S. DISTRICT COURT
MID. DIST. TENN.

Outgoing

MCCX
Privileged

Keith Throckmorton, Clerk
United States District Court
Middle District of Tennessee
801 Broadway, Rm. 800
Nashville, TN 37203

MCCX has neither inspected
nor censored and is
not responsible for content



Outgoing

APR 14 2014

MCCX
Privileged

**LEGAL MAIL ONLY**