# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

WILLIAM L. JENKINS, )
)
    Plaintiff, ) Case No. 1:14-0053
) Chief Judge Haynes
v. )
)
TENNESSEE DEPARTMENT OF )
CORRECTIONS, et al., )
)
    Defendant. )

## MEMORANDUM

Plaintiff, William L. Jenkins, a state prisoner at the Morgan County Correctional Complex in Wartburg, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the Defendants: Tennessee Department of Corrections ("TDOC"); Derrick Schofield, TDOC Commissioner; Correction Corporation of America ("CCA"); South Central Correctional Facility ("SCCF"); Arvil Chapman, SCCF Warden; Gregory Keeton, SCCF Gang Coordinator; Christopher McClain, SCCF Chief of Security; Daniel Johnson, SCCF Captain; Hank Indman; SCCF Senior Officer: Robin Todd, Amber Bass, Tommy Mize; Leigh Staggs; Richard Burke, SCCF officers; Jessica McElroy, SCCF Grievance Chairperson; Wendy Ashe; SCCF Medical Director; Clarence Potts, SCCF Chief of Security; and the SCCF Medical Department. Plaintiff challenges the conditions of his previous confinement at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee.

In his complaint, Plaintiff asserts four claims for relief: (1) reckless disregard by prison and TDOC officials of a serious and imminent risk of harm to Plaintiff posed by other inmates, causing Plaintiff to be stabbed in the chest and face with a five-inch knife by a fellow inmate; (2) Defendant Tommy Mize's deliberate indifference to Plaintiff's serious medical needs in violation

of the Eighth Amendment; (3) Defendants "SCCF Medical Department" and Wendy Ashe's deliberate indifference to Plaintiff's serious medical needs; and (4) retaliation for Plaintiff's exercise of his First Amendment rights to submit prison grievances. Plaintiff names all the natural-person Defendants in their official and individual capacities, and seeks to hold TDOC and CCA "municipally liable" for his injuries. (Docket Entry No. 1, Complaint § 1 at ¶ 16.)

## A. Analysis of the Complaint

According to his complaint, on September 1, 2013, Plaintiff was stabbed during a gang-related incident at SCCF. Plaintiff alleges that he suffered permanent scarring to his face, partial loss of use of his right arm, and has been diagnosed with post-traumatic stress disorder, paranoia, and anxiety after aSix other inmates were also severely injured, one of whom died from his injuries. Plaintiff alleges that this event was the culmination of escalating gang-related violence at SCCF during the preceding two months.

According to Plaintiff, Defendants Gregory Keeton, Hank Indman, Robin Todd, Amber Bass, Daniel Johnson, Christopher McClain, as well as Warden Arvil Chapman and TDOC Commissioner Derrick Schofield, were aware of, but recklessly disregarded, the serious risk of harm to Plaintiff due to gang violence as SCCF. For this claim, Plaintiff alleges that he and several other inmates met SCCF prison officials several times to discuss gang-related violence and to identify inmates who were gang leaders in SCCF inmate population. These prison officials told Plaintiff and the other inmates that "the State was threatening to come in to regulate and that they 'didn't want the State coming in and telling them how to run things.'" Id at § 1 ¶ 4. Plaintiff and the other inmates were instructed to exercise their "supervisory authority" over other inmates to keep SCCF from a lock down and to "keep the State out." Id. ¶ 5.

Plaintiff alleges that the common practice and policy at SCCF for the warden and officers

acting under his direction were to "rely solely on the assurances of gang members as a deterrent to serious threats of gang violence." Id. ¶ 6. At a subsequent meeting, prison officials told Plaintiff and other inmates that there had been rumors of an impending gang riot between the Bloods and Crips, and again warned Plaintiff and the other inmates that they should "control [their] homeboys." Id. ¶ 9. Plaintiff responded that he would try, but it was difficult because new inmates arrived everyday.

Plaintiff avers that the disclosure of such sensitive security information, a possible gang riot, to Plaintiff and other inmates was reckless and placed Plaintiff and those inmates at these meetings at greater risk to their personal safety. In addition, Plaintiff alleges that disclosure of the rumor of an impending gang riot increased the level of tension between the two gangs and "alerted and alarmed both gangs into a heightened state of panic and fear of being attacked by opposing gangs." Id. at ¶ 11. Plaintiff asserts that this fear caused some inmates to arm themselves for protection and led some inmates to "feel the need to attack before being attacked which is essentially what happened." Id. at ¶ 12.

Based on these meetings, Plaintiff alleges that at the direction of Warden Chapman, the individual defendants and officials at TDOC, including Commissioner Schofield, were aware of the serious threat posed to the safety of Plaintiff and other inmates at SCCF posed by the escalating gang-related violence. Plaintiff alleges that despite this awareness, Defendants failed to take reasonable steps to protect Plaintiff and the other inmates at SCCF who were at risk and in imminent danger. Plaintiff asserts that the individual Defendants' failure to act reasonably was based on the policy and procedure set by TDOC and CCA.

Plaintiff alleges that he underwent surgery at the Wayne County Hospital and was discharged from the hospital with instructions for the care of his wounds and the changing of his

bandages. Upon his return to SCCF, Plaintiff was placed in a segregation unit on twenty-four-hour lockdown for eight days. During that time period, Plaintiff was not allowed to bathe, and medical personnel refused to clean his wounds or change his bandages. Plaintiff states that he was administered pain medication twice daily by a nurse or technician from the medical department, and on each occasion, Plaintiff asked when his wounds would be cleaned and his bandages changed. Each time, the response was that someone else would do it. Because his wounds were not cleaned and the bandages were not changed during the eight days following his release from the hospital, Plaintiff alleges that his wounds were oozing fluid and became encrusted. Plaintiff alleges that the lack of wound care rendered the process of removing the staples and stitches substantially more painful than it otherwise would have been.

### B. Conclusions of Law

Under 28 U.S.C. § 1915(e)(2)(B), the Court must conduct an initial review of a civil complaint filed in forma pauperis and dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. at 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b); see also 42 U.S.C. § 1997e(c) (requiring dismissal of any § 1983 action challenging a prisoner's conditions of confinement on the same grounds).

The dismissal standards in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), govern dismissals under the PLRA "because the

relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In considering whether a pro se prisoner's complaint meets this standard, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted). In addition, the Court is mindful that pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991).

To state a colorable claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a deprivation of rights secured by the Constitution and laws of the United States and (2) that "the deprivation was caused by a person acting under color of state law." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2002) (citations omitted).

As to Defendant TDOC, as a state agency TDOC is not a person that can be sued in a 1983 action. Alabama v. Pugh, 438 U.S. 781, 782 (1978) and Plaintiff's damages claims against the Defendants, in their official capacities is barred as a matter of law. Will v. Michigan Dept of State Police, 491 U.S. 58, 64 (1989). As to official-capacity claims against TDOC Commissioner Schofield,"prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). To state this Eighth Amendment

for a prison official's failure to protect him, Plaintiff must allege that Defendants were deliberately indifferent "to a substantial risk of serious harm" to him. Id. at 828. Based upon Plaintiff's allegations in his complaint, the Court concludes that Plaintiff states a colorable claims against Defendants Schofield, Gregory Keeton, Hank Indman, Robin Todd, Amber Bass, Daniel Johnson, Christopher McClain, and Arvil Chapman for their alleged knowledge and deliberate indifference to the imminent and serious risk to Plaintiff's personal safety due to gang violence at SCCF.

As to Defendant CCA, given its obligation to house and provide services to state inmates, CCA performs a state function. West v. Atkins, 487 U.S. 42, 56 (1988), Street v. Corrs. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996). To hold (CCA liable in a 1983 action, Plaintiff must allege plausible facts of causal link to his injuries and CCA's policy or custom. Id. Here, Plaintiff alleges that CCA's policy relied upon Plaintiff and other inmates to address inmate gang threats to their personal safety. The Court concludes that Plaintiff states a colorable claim against CCA.

As to Defendant Mize, Plaintiff, alleges that Defendant Mize forced Plaintiff into restraints before securing Plaintiff medical help and despite Plaintiff's serious injuries and profusely bleeding from a chest wound. Plaintiff alleges that Defendant Mize's alleged failure to call a nurse or request immediate medical attention caused him unnecessary suffering. Plaintiff alleges that he was placed on the floor outside medical nearly bled to death before receiving necessary medical care. The Court concludes that Plaintiff states a viable claim against Defendant MIze in his individual capacity. Estelle v. Gamble, 429 U.S. 97, 106 (1976)

For his medical care claims against the Defendant "SCCF Medical Department", the

Court concludes that the "SCCF Medical Department" is not a suable entity for a Section 1983 action. As to Wendy Ashe, SCCF Medical Director, Plaintiff does not allege facts suggesting that Defendant Ashe was personally involved in the failure to treat his wounds or had knowledge of Plaintiff's treatment. The Court concludes that Plaintiff's claim against Defendant Ashe shall be dismissed for failure to state a colorable claim. During discovery, Plaintiff may identify the individuals who were allegedly responsible for failing to treat his wounds and if so can amend his complaint to name such individuals.

For his retaliation claim, Plaintiff alleges that he filed a grievance on September 8, 2013 related to the stabbing incident. The grievance was denied by Grievance Chairperson Jessica McElroy and returned to him on September 20 by Defendant Staggs. When Plaintiff told Defendant Staggs he wanted to appeal, Defendant Staggs commented that he was wasting his time and hers. Plaintiff signed the form and submitted it back to Defendant Staggs, stating his desire to appeal the decision. The SCCC warden upheld the decision and the form was returned to Plaintiff on October 1, 2013, again by Defendant Staggs. Plaintiff wanted to appeal the denial of his grievance to the third and final level, but Staggs refused to wait for him to read the warden's response before signing and returning the form to her. Instead, Staggs allegedly was angry and told Plaintiff that she would disqualify the grievance if he did not return it immediately. Plaintiff tried to explain that he wanted to attach a supplemental clarification to the form that would only take five minutes. Plaintiff proceeded to sign and date the form while trying to reason with Staggs. Staggs told him she "did not have time for this sh** and that [his] grievance was disqualified," and she walked away. (Docket Entry No. 1, Complaint at § 4 ¶ 10.) Plaintiff put the grievance in the door knowing that Staggs would have to return past his door to

exit the pod. However, Staggs ignored his form when she passed back by.

Plaintiff explained the situation to another officer, who permitted Plaintiff to attach the supplemental clarification and placed the form back in the grievance box that same day. However, a few days later, Plaintiff was notified that Staggs had disqualified the grievance. Attached to Staggs' response was a witness statement prepared by CO Richard Burke, attesting that he had witnessed Plaintiff's refusal to return the grievance after receiving the warden's response. Plaintiff asserts that this statement by Burke is fraudulent, that Burke had not accompanied Staggs at any time during the grievance review, and that Burke was not in Plaintiff's pod during his disagreement with Staggs. Plaintiff asserts that Burke and Staggs acted in retaliation for his having submitted the initial grievance. Plaintiff states that Staggs later admitted to him that she went to the mailroom and pulled Plaintiff's grievance from the mail pile to prevent it from being forwarded to Commissioner Schofield. Plaintiff thereafter wrote a grievance based on these facts and requesting review of the security cameras to validate his assertion that Burke's statement was false. This grievance was denied at all levels, without SCCF authorities' having viewed the security footage.

Based on these facts, Plaintiff sues Staggs and Burke in their official and individual capacities for "conspiring against [him], for falsifying documents, for discriminating against [him] and retaliating against [him] for exercising [his] right under the 1st Amendment to utilize the grievance procedures, and for abusing their power and acting illegally and unethically while under their scopes of employment." (Complaint § 4 ¶ 16.) Plaintiff also sues Grievance Chairperson Jessica McElroy, Chief of Security C. Potts, and TDOC Commissioner Schofield in their official and individual capacities for "being fully made aware of the corrupt actions of their

employees and failing to correct them and . . . for neglecting to review or consider" the evidence available to them, which would have proved Plaintiff's claims. Id. ¶ 18.

To recover damages on a retaliation claim against the remaining Defendants in their individual capacity, Plaintiff will need to prove that

> (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

Thaddeus–X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality opinion).

Plaintiff engaged in protected conduct by filing a prison grievance. The adverse action taken against him appears to be that he was barred from pursuing his appeal to the highest possible administrative level, and Plaintiff alleges a causal connection between these two events. While it is questionable whether the adverse action is of the type that would deter persons of ordinary firmness from continuing to file administrative grievances, the Court concludes that Plaintiff has stated a colorable retaliation claim against Staggs and Burke, at least for purposes of the initial review required by the PLRA.[1]

Plaintiff's claims against McElroy and Potts, however, are in essence nothing but claims based on their failure to investigate or respond to Plaintiff's allegations of wrongdoing by Staggs and Burke. A prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure. See, e.g., Lee v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); Dunn v. Martin,

---

[1] The Court further notes that Plaintiff's allegations, if true, may establish cause for failure to completely exhaust his claims at the administrative level.

178 F. App'x 876, 878 (11th Cir. 2006); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (stating that the Constitution creates no entitlement to a voluntarily established grievance procedure). The Court finds that, to the extent Plaintiff's claims merely allege a failure on the part of prison officials to adequately respond to letters or complaints about how a grievance procedure was conducted, they fail to state a claim. The claims against Defendants McElroy and Potts will therefore be dismissed for failure to state a claim for which relief may be granted.

## Conclusion

For the reasons set forth herein, the claims against the Defendants: TDOC; Jessica McElroy; Wendy Ashe; Clarence Potts; and the SCCF Medical Department shall be dismissed for failure to state a claim for which relief may be granted. Plaintiff's claims against the remaining Defendants shall proceed.

An appropriate Order is filed herewith.

ENTERED this the __13th__ day of May, 2014

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court